The next case today is Vapotherm, Inc. v. Clayton Santiago, Appeal No. 21-1567. Thank you, Your Honors, and may it please the Court, my name is Michael Lewis, from the law firm of Rathjong and Pignatelli, on behalf of Vapotherm, Inc. Chief Judge Howard, if I could reserve three minutes for rebuttal. Yes. Thank you. Your Honors, this case should be reversed because the underlying decision by Judge McAuliffe was an error and is in conflict with the decisional law of the First Circuit. And I refer the Court specifically to three cases spanning 2013 to 2015, which the First Circuit decided in the area of personal jurisdiction, which are on point in this case. The Bluetart financial decision in 2013, the C.W. Downer decision in 2014, and the COSART v. UnitedXL decision in 2015. The argument from Santiago's side is essentially an effort to retrench, I think, demand of physical presence in many ways with regard to personal jurisdiction, which has been rejected by the First Circuit on numerous occasions in recent cases, and also most recently by the United States Supreme Court in the Ford decision that came out in 2024. But to put a fine point on it, you'd only read the first few paragraphs of the C.W. Downer and company decision from 2014, where Chief Judge Lynch, then Chief Judge Lynch, you may be wrong, excuse me if I am, wrote, that this contract case, describing the case, presents these issues where the parties' contacts were not firsthand and involved no physical presence in Massachusetts, but were by phone, email, and internet over an international border. And in that case, the First Circuit nevertheless found personal jurisdiction over the Canadian company in Massachusetts. And that was true notwithstanding the fact that the contracted issue had a Canadian choice of law provision. And the reason for that is because, as we all now know in ways we never thought we would, certainly now, but we knew in increasing degrees over the last couple decades, business life in the United States is increasingly remote and is increasingly technologically driven. And nevertheless, you can have personal jurisdiction through a hub-and-spokes sort of arrangement as existed with Vapotherm, because the connections are enormous as between people working in a foreign jurisdiction and people working for a home jurisdiction headquartered like Vapotherm was in New Hampshire. So, the contract itself was executed in two different places. Mr. Santiago was in Georgia when the contract was signed. He contracted to do business in the southeast, not New Hampshire, but for a few trips to New Hampshire every year. That's it. Well, the contract had two parties. It had Vapotherm headquartered in New Hampshire, signed by the CFO in New Hampshire, all that supported by the record, and Santiago was in Georgia. You're right, Your Honor. But Santiago traveled to New Hampshire to tour the manufacturing plant to understand the product that he was selling that was being produced out of New Hampshire. He recruited other employees to work for the Vapotherm company, which was headquartered in New Hampshire. He engaged consistently with the HR aspects of his own employment with New Hampshire, received payment from New Hampshire, received tech support from New Hampshire, all headquartered from Vapotherm. And so, for four years, he was an employee of a New Hampshire business, and there's no ambiguity about that. He was doing business for a New Hampshire business and being paid, and in that respect, the decisional law of the First Circuit and other jurisdictions is that he reaped the benefits of the advantages of doing business with New Hampshire's forum, and so, therefore, can be held in a court in a jurisdiction that's most convenient for a New Hampshire business to litigate in, which includes the federal district of New Hampshire. And so, certainly, Judge Thompson, the contacts you've described are not a day-to-day physical presence in New Hampshire set of contacts. Nevertheless, they include contacts at least as sufficient as was the case in the C.W. Downer case, where, again, Judge Lynch begins the opinion by saying that there is no physical presence aspects to the remote relationship described in the case. There's also the CoSART versus UnitedXL company case, which describes a business decision that really is quite similar to this one, where a Kansas business set up an employment relationship with a Massachusetts employee, and when the Massachusetts employee brought a lawsuit against a Kansas business in Massachusetts, the First Circuit held that there was personal jurisdiction, notwithstanding no physical presence relationship between Kansas and Massachusetts, but for providing the infrastructure, essentially, for the Massachusetts employee to work remotely. And so, these decisions indicate that the First Circuit has recognized that the sort of relationships that are set up over a consistent long period of time, four years is not a short period of time, are sufficient for the purpose of establishing jurisdiction, at least as a matter of a contract theory, which is alleged here. Let me ask you, the employees Santiago recruited, they were not in New Hampshire, correct? Yes, you're correct.  So, Santiago recruited a series of employees as he stepped up his responsibilities working for this New Hampshire business over time while he was in Georgia, and those employees then also joined the New Hampshire business and signed their own contracts with VapoTherm, a New Hampshire business, and visited themselves at VapoTherm to understand and be trained on their products. So, yes, you're right. They were Georgia or otherwise located employees, but the recruitment aspects only add to the layer of connection between Santiago and New Hampshire to the extent he is facilitating additional contractual relationships between other people in the New Hampshire business. And so, at least if you're applying the case law that I believe is binding upon the First Circuit, its own decisions, the record as it stands in this case more than justifies a finding of personal jurisdiction here. And in fact, I'm not aware of a single case that this court has decided that would justify the rejection of personal jurisdiction. Certainly, it is reasonable to hold Mr. Santiago to accountability before New Hampshire courts here as it would be in, for instance, the case of Adelson v. Henanel, where the defendant in that case was an Israeli and never left because of an ongoing relationship between Massachusetts and the Israeli employee. The court found that notwithstanding the international relationship, that Henanel in the case could be sued in a Massachusetts court. And that's a 2007 decision that's cited frequently in this court's jurisprudence. It's all because as the jurisprudence of this court is developed, it is increasingly recognized the reality that many businesses do, as they grow, do business nationally. And that the remote relationships that arise, nevertheless, you know, constitute very serious contacts with a home jurisdiction. And there's not really a surprise. There isn't a surprise when that home jurisdiction seeks to remedy its contract regs, among other things, in the courts most convenient to it. Counsel, let me ask you, where do you draw the line? What if Santiago only went to New Hampshire one time? He recruited maybe only one employee in Georgia. Would that change your analysis or where exactly is that? I think one line that the court has drawn is the Adams v. Adams decision in 2010. And in that decision, you have basically a one-off contract. I believe it's a promissory note between a person in Massachusetts and a person in Texas, father and son. Regrettable case that a father and son would be litigating against each other. But in that case, the record didn't reflect anything more than a contract relationship between the father and the son, with the son not really having any other contacts of any kind in Massachusetts where the lawsuit was brought. That's not this case. That's one example of where you might draw a line, which is just a contract with no additional relationship established, a one-off. And I don't know if that's the line, but it could be. It's at least one line you could infer from your case law. But that is not what this case is. This case is at least as strong in terms of continuing contacts after the initial contracting as was the case in Blue Tarp Financial v. Matrix. That was a case where a South Carolina construction business sought credit from a main credit provider. It entered a contract and then it continued to have some contact with the main credit provider over time. It was not even an employment relationship. And yet this court still found that jurisdiction was proper in the main federal district court against personal jurisdiction challenge. Again, what you have here is... I'm sorry, Your Honor. Going back to the Adams v. Adams case that you cited. So, obviously, using that analogy, here you have much more contacts than in Adams. Am I correct? That's our argument. Yeah, I mean, we do, as a matter of fact. And I think it's important maybe to say something about the matters of fact here. I have great levels of respect for Judge McAuliffe. I think that he did not apply the prima facie standard, which he said he was applying properly to his resolution of this case. The Cosart case says that notwithstanding the fact that the plaintiff, Vapotherm in this case, bears the burden that when you're applying a prima facie case, you take the plaintiff's evidentiary proffers as true and construe them in a light most favorable to the plaintiff's claims. And also consider uncontradicted facts proffered by the defendant. I think if you read Judge McAuliffe's decision and you... But this is more than a pleadings case. I mean, the prima facie case anticipates jurisdictional discovery. And whatever is discovered in that process, the court has a right to consider it and look at it against the allegations in the complaint. I agree with you completely, Your Honor, but that doesn't... And what I guess I'll say about the court's recitation of facts is that the court did not draw the inferences it should in our favor, notwithstanding considering the facts in the record. And those inferences strongly favor our position on personal jurisdiction. So, you know, you do not get, for instance, the description in the record in the decision of facts like, you know, that Santiago was promoted repeatedly as a Vapotherm employee and had supervisor responsibility and recruiting responsibility, which included bringing people into the Vapotherm fold and encouraging them to strike their own contracts with Vapotherm, a New Hampshire business. And there's, you know, and if you start to consider the depth of that, you know, business relationship with New Hampshire businesses against this court's decisions and you view that in the light of the prima facie standard, I think you'll come... I hope you'll come to the conclusion that Judge McAuliffe didn't in fact apply the prima facie standard, but applied a standard review that drew inferences against Vapotherm and failed to consider, you know, the facts in the record that should be drawn in Vapotherm's favor and in favor of the finding of personal jurisdiction. Counsel, with respect to the intentional interference claim, tell me about the activities, the connections between Santiago and Lonsway. OK, so, yeah, it's so Lonsway came to Vapotherm, I believe, by virtue of recruitment efforts by Santiago to when he was at Vapotherm. Between Santiago and between Vapotherm and one of Vapotherm's clients. So I guess what I say is Santiago working for Vapotherm got a client from... got a person working for a client of Vapotherm to come to Vapotherm as a Vapotherm employee. So that's how Lonsway came to Vapotherm in the first instance. Santiago then left Vapotherm for Vero and he continued to communicate with Lonsway after the fact. And then Lonsway ended up doing what he had done before, but jumping from Vapotherm to Vero. Are you following, Your Honor? So you have a pattern of conduct by Santiago and those are detrimental and prejudicial to Vapotherm on the other side of the employment rainbow for Santiago. That is, Vapotherm lost Lonsway and it's Vapotherm's allegation that that was because of Santiago's efforts to recruit Lonsway away from Vapotherm, which was consistent with the pattern of conduct that caused Lonsway to be at Vapotherm in the first instance. And the record reflects that both of them will say, well, we were in communication after the fact, after Santiago left Vapotherm and before Lonsway went to Vero, but only in regard to social matters and only in regard to the sale of a puppy. And we haven't had the chance to see what those communications were because we were only given limited discovery. But if we do written discovery, we may find that the communications, if they've been preserved, are far more substantial. And that, again, would create additional contacts because what you have is Santiago, a Georgia employee, having communications with Lonsway, a Vapotherm employee, admittedly working not in New Hampshire, but still for a New Hampshire business. Yes, Judge Thompson. I'll be brief. Is your allegation of recruitment based on anything other than the fact of the move to Vero? The allegation is based on the fact that three people, two of whom were supervised by Santiago, maybe all three of them were, simultaneously resigned on the same day from Vapotherm and went to Vero after Santiago himself had gone to Vero, which I think is powerful evidence. Now, all there is right now is the deposition testimony of all involved that there was nothing fishy about it. On the other hand, though, there is deposition testimony from Ms. Nicolai, who said that she did consult with Santiago about some of these employees as they came across the line. And they'll say, well, this was after there had already been a strong decision. I believe this is the fact, you know, that in favor of hiring them. But nevertheless, I mean, this is all taking their word for it without really testing the testimony against what can be uncovered in written discovery. And I will tell you, as someone who has a lot of experience in trial litigation and discovery, quite a bit comes out when you get emails and text messages and provides a much stronger contemporaneous record about what people actually were doing than what is often remembered after the fact. You've reserved some time. OK, I'm sorry. Thank you, Your Honor. If you would mute your audio and video, we'll hear from Mr. Walker. You may proceed, counsel. Thank you, Your Honor. Honorable Justice. Counsel, before you started, sorry, if you could address at some point, so I don't have to interrupt you in your argument, Adams versus Adams analogy that the opposing counsel brought, I appreciate it. So go ahead and introduce yourself. Very good, Judge Albee. Honorable Justice of the First Circuit, Brett Walker, on behalf of the appellant in this matter, the appellee on this matter, Clayton Santiago. And as this court just heard in response to Judge Thompson's last question there, Vapotherm's entire case really rests on a need for radical inferences. There was also a lot of discussion about what might be produced if there's ever a discovery. That's the very definition of a fishing expedition and certainly not what we're here to address today. Right now, we're here to address the motion to dismiss, which was granted for purposes of personal jurisdiction. So to support its claim for personal jurisdiction over Clayton Santiago, who is an individual and a resident of Georgia slash South Carolina, it's Vapotherm's burden to proffer evidence of specific facts set forth in the record. And that is the language that's used by this court in the case of Boyd v. Garteck and certainly plenty of others. You don't deny that it is a New Hampshire company and that there are some contacts with the state of New Hampshire. And so maybe you could get to Judge Albee's question, where's the line drawing in your mind in this case? Does it have to do with the nature of the tort and the tort's contact with the state? So it does, of course. And I think the most recent case to rule upon that would have been the Ford decision. And all the decisions that lead up to it make clear that it's not sufficient to simply have a connection because Judge Thompson, you're right. Yes, it's a New Hampshire-based company. And yes, there are some attenuated and inconsequential connections. Vapotherm makes much of Clayton Santiago having traveled to New Hampshire on five to seven occasions in the course of his four years career. But none of those five to seven visits have anything to do with the cause of action now before this court. They make much of what they call frequent communications by phone and email, although when this court reviews the exhibits and reviews the deposition testimony and everything that's competently before the court, the court will see that the term that the deponent uses is not frequent, not frequent. Clayton Santiago multiple times says it was not frequent contact. But in any event, any of those contacts would have nothing to do with this. And as the court has ruled time and again, in order to satisfy the first part, the first prong of the tripartite test under COSA, there must be, the cause of action must arise out of the connection, must arise out. Now, the allegations here, weak as they may be, are that there was some sort of discussions and the courts already asked about this and got the response. There was the allegation that there was some sort of communications going on between Clayton Santiago and Lonsway Philpot Wong, but that would have all been in Florida and Georgia, had nothing to do with New Hampshire. So from the outset, while there are some connections, tenuous they may be and attenuated, they are inconsequential for purposes of this analysis. But if they were improperly recruiting Vipotherm's employees, is the cause of action that impacted a New Hampshire company? If they were. And the first thing that I would bring up to address that, Your Honor, is that as you yourself, Judge Thompson, actually noted, we're beyond the plea, we're not talking about the pleadings right now. And as this Court has made clear, once we've gone into depositions for purposes of establishing personal jurisdiction, the plaintiff, quote, may not rely on unsupported allegations in their pleadings to make a prima facie showing of personal jurisdiction. Once again, I'm quoting from that Gartec case, and Judge Thompson has already identified this as a very big issue. The complaint upon which Vipotherm argues is not verified. It's not sworn. And that's interesting, I keep bringing up this Gartec case, because in that case, the Court notes, you could very easily have addressed this. You could have done affidavits, you could have allowed the deposition of some of your own witnesses to shore up all the weaknesses in your personal jurisdiction argument. In Gartec, they chose not to do it, and as a result, personal jurisdiction failed. It's certainly Clayton Santiago's position that Vipotherm has likewise failed to do so. And they could have. In fact, we asked for depositions, it was denied. So they had the opportunity to either make it a sworn complaint and make that somehow evidence, or submit affidavits. They did none of those. But to also answer this Court's question... I guess what I'm trying to figure out is whether the sheer act of three employees leaving the New Hampshire company, is that enough for there to be the inference of recruitment? Of course not. OSPAC standing alone, which is what seemed to trouble the District Court. Of course not, Your Honor, and that's why I use that term, radical inferences. Because there are radical inferences that need to be drawn here. Aside from the radical inferences that somehow asking three people to leave would have cost $75,000 of damages to reach the threshold for this Court, but that's only a footnote in our brief. More importantly, no, it doesn't, especially if that context were all happening down in New Hampshire. You mean down in Georgia? I'm sorry, what did I say? I meant Georgia, I apologize. But if there was damage in New Hampshire, if there was, that is but one thing for this Court to consider. It is only one thing. There's plenty of other things for this Court to consider for personal jurisdiction, to begin with, the location of the defendant, which is in either Georgia or South Carolina. The location of the alleged activity, which was definitely in Georgia and Florida. The terms of the state whose law has governed the terms of the agreement, which in this case is Maryland. And I'm sure that's not lost on the Court. The so-called Santiago Agreement is governed by Maryland law. Now that's an error that Vapothermo apparently picked up through the legal department because they later subsequently changed it for the Lonsway and Wong and Philpott agreements. Those are now governed by New Hampshire law. But there's no question Santiago's was governed by Maryland law. And certainly another thing for this Court to consider is the location of all the evidence and witnesses, which in this case is once again down in Georgia, Florida. And I'm not sure if this Court's aware of it, but Vapothermo has filed this same case against this very same person in the state courts of Georgia. And notably, Clayton Santiago did not oppose personal jurisdiction in Georgia because, to the extent there's any case here at all, it is in Georgia. And that's where we'd ask that this matter be addressed, as it already is, really. In Bluetarp, after finding personal jurisdiction, we transferred the case using a different transfer method. I'm sorry, I didn't hear that last one, Your Honor. I said we transferred the case using a different transfer method because of what you're saying now. The evidence was located in, I believe it was South Carolina. It's a short memory thing, Your Honor, it was. Let me just suspend. There is jurisdiction in New Hampshire, but you're trying to say you can always, for convenience or the evidence or other factors, there's another test. But one thing, we're dealing now with personal jurisdiction. Yes, yes, we are, Your Honor. And I'd say, most importantly, to distinguish the case now before the Court, from that Bluetarp case that this Court just referenced, it was the Forum Selection Clause. The Forum Selection Clause is very, very important. Once again, Vapotherm, and this is in the exhibits presented before this Court, so it's certainly in the record for this Court. They are a sophisticated company with a legal department. There's references to their legal department. Nonetheless, there was no Forum Selection Clause in the so-called Santiago Agreement. And, as this Court is well aware, the Bluetarp case featured a Forum Selection Clause. It was for Maine, and the contract was governed by Maine law. Here, we have no Forum Selection Clause, and it was governed by Maryland law. To further distinguish, because I think Judge Helpe had asked if I could further distinguish these other cases. It's also notable, Vapotherm makes much argument about the Bluetarp case, the C.W. Downer case, the Kosak case, the Adam v. Adams case. Notably, those are only mentioned once, with the exception of Kosak. They're mentioned only once in his brief, in Vapotherm's brief, and that's in the standard of law section. Now, Kosak comes up one other time at the very beginning of the argument section, but that shows how important those cases are, that they're only cited once. That's in the standard of law, and then Kosak once again in the argument. But, to distinguish them, first of all, as this Court knows, when we're talking about personal jurisdiction, it's highly fact-specific. Very fact-specific. So it can oftentimes be difficult to relate one case to another. But if you want to relate and distinguish these cases, I'd point to Bluetarp. They had a Forum Selection Clause absence in this case. C.W. Downer, that was a corporation, and the work was being done from home offices, but it was for purposes of work in Massachusetts. It was still work in Massachusetts, it was focused on a business in Massachusetts, which is lacking here. Remember, Clayton Santiago was a Georgia man, hired to do work in Georgia, to some extent Florida, supervising Georgians and Floridians in Georgia. All of his contacts were in Georgia, so that's very different than what was happening in C.W. Downer. And then Kosak, perhaps most importantly, in Kosak, the Court very specifically says that that contract was breached in Massachusetts. I think it's on page 22 of that decision, the Court makes note that that was breached. So the cause of action, to get to what the Court was talking about, the situs of the activities, the Kosak case is very readily distinguishable because the breach actually happened right there. The Adams v. Adams case was a familial matter, and it had to do with a payable note. There's really no facts that relate the Adams v. Adams case to the present case, and that's especially true because that case was cited only once in Vapo-Thunberg's brief, and only because it was citing to a quote from it, and it was quoted in another case. So clearly that one is not controlling on this, but really informative. The Adelson case, which was also brought up, that involves a very high-level executive, one of the founders of the company. He knew that the company was based in Massachusetts because he attended board meetings. He was on the board. So when you're sitting on a board in Massachusetts, I think it was in Needham, Massachusetts, when you're sitting on the board in Massachusetts, it's very foreseeable that you're going to be called in to a Massachusetts court to answer for this, especially when, as in Adelson, he's in Israel. So it makes sense that you would know that if you're going to be called to answer to the company, it's going to be in Massachusetts, the very place where you sat for the board, the very place where you made and negotiated the contract, and once again, that's at issue in this case, where this contract was formed. As Judge Thompson brought up, Judge Thompson mentioned at one point, the contract was executed in two different places, and I do want to make clear that Clayton Santiago does not feel that way. There's no actual evidence of where Vapotherm executed its piece of this. There are radical inferences that could allow someone to make such an argument, which Vapotherm does here, but as this court takes post-examination of the record, it will see that nowhere does anybody ever say Clayton Santiago sent that to New Hampshire, or even to John Landry, the CFO. All it says is that's John Landry's signature. There's no indication as to how he got it, when he got it, where he got it. At one point, Clayton Santiago was asked, well, where was John Landry at the time? He said, maybe he was at his office. I don't know where he was. He could have been at home for all I know. So, we don't have evidence there, aside from radical inferences to it, and moreover, even if it was, that's only one piece that this court would consider as to the formation of that contract. So, have I adequately addressed the court's questions on that? Would it be good to move on to some of the... This court's already asked about the first prong within the tripartite COSAT test there, and that's the contacts, and as I said, they must really arise from this actual cause of action. Insufficient to just say this inconsequential context. The next one would be the purposeful availment of the protections of New Hampshire law, and the benefits of New Hampshire law, and that, of course, is broken down into two. Voluntariness and foreseeability, as this court is well aware. The voluntariness is often seen through something like a forum selection clause, like in Bluetop, for instance, or in the Adelson case. Again, I bring up the Adelson case because this court was referencing it. That one, again, had a forum selection clause of Massachusetts. So, you're volunteering to appear before a First Circuit court. Not present in this case, but also, more importantly, the foreseeability. I'm sure it's not lost on this court that there is no foreseeability for Clayton Santiago, a non-lawyer, a mid-level manager who was hired in Georgia. He interviewed in Georgia. He worked in Georgia. He worked with Georgian employees of Apotherm, but also at Georgian hospitals. When he interviewed for this job, as is made clear in the record, he interviewed in Georgia, in Illinois. His supervisor was in South Carolina. His supervisor's supervisor was in Illinois. So, the agreement to which he entered into an agreement with Apotherm was governed by Maryland law. How is it that any reasonable person could think, based on all of his Georgia work and what he thought was being hired for Georgia work, would result in him being hauled 800 miles north into New England, a place that he has no reason to visit, aside from getting hauled in to appear before this court, in addition to the same exact case he's already answering for in Georgia. And that brings us to the third part of the tripartite test under COSA, and that's the reasonableness and fairness. And, as this court's well aware, it will examine the gestalt factors, the five gestalt factors in that one. So, when we go through the five, and I'm sure the court's very familiar with them, the first one is defendant's burden of appearing. And we've already made clear that the defendant's got something of a burden. He's an individual sitting down in South Carolina, working in Georgia. And he recently moved to South Carolina. And now he's being asked to come all the way up to New England, a place with which he has no contacts and no reason to visit, aside from being hauled before this court. The next one is the forum state's interest in adjudicating... Counsel, you have 30 seconds to make your leading point. Very good, Your Honor. So, the last thing that I would bring up here is that the vapotherm has limited interest, I'm sorry, has a reduced prejudice in doing this case in Georgia. Because, as you know, vapotherm is a nationwide company. It's got a presence in Georgia. There's no problem with vapotherm prosecuting this case in Georgia, where it should be. Whereas, there's a large problem to Clayton Santiago, the individual. And this court has made clear that it will consider the plight of an individual versus a large corporation, like in C.W. Downer, for instance. And the New York, I'm sorry, the Ticketmaster of New York case, by this First Circuit, addresses those individual considerations versus corporate considerations. That's the final way in which I'll distinguish the many cases that vapotherm has brought up, as far as C.W. Downer, Cosar, Bluetop, all those. Your Honor, Honorable Justice of the First Circuit, is there anything else I can address for you at this time? Thank you, Counsel. You may mute your audio and video, Mr. Lewis. Thank you, Your Honor. I guess the first point I make in response is, I don't think that the inferences that we're asking the court to draw here are radical. I think they're proper inferences. So, with regard to where the contract was executed on vapotherm's part, the testimony is at the appendix 264, with regard to where Mr. Santiago believed John Landry was. And John Landry was the CEO, and he's asked, where did he work? And he said, out of Exeter, New Hampshire. So that's, and you can see for yourself. Does that answer the question of where the contract was executed? It doesn't answer the question beyond the regular inferences that one might draw, which is that John Landry worked for vapotherm in Exeter, New Hampshire, and he's the person who signed the contract. There's nothing extraordinary or radical about it. The problem I guess I'm having is that when the burden of demonstrating jurisdiction is on you, that I'm looking for what evidence you put forward to support jurisdiction, and I'm particularly trying to figure out the connection between the cause of action you are asserting in New Hampshire and what evidence supports it. I mean, the evidence is the contract itself, which says Vapotherm is an Exeter company, and Santiago is entering an agreement with Vapotherm that he then lived under for four years, with Vapotherm being headquartered in New Hampshire. He's asked on the record, was Vapotherm ever headquartered anywhere else? And he said, not that I know of. There is also no great reach in terms of the record that's been developed here. The testimony from the depositions are sufficient, along with the exhibits that we've presented. It's not as if we needed to verify the complaint. From a personal jurisdiction standpoint, we've presented correspondence that includes emails sent by the relevant actors using the Vapotherm watermark, which says that they work out of Exeter, New Hampshire, wherever they are. It says they're affiliated with an Exeter, New Hampshire company. We've presented numerous contracts that indicate multiple employees engaging in contractual relationships with Vapotherm headquartered in New Hampshire. There's no ambiguity about that. The record reflects travel to New Hampshire to learn about the product, and these people are salespeople selling a New Hampshire product throughout the country. I don't really think this is a closed case. Maybe you do, but under your rulings, this is much deeper in terms of relationship with the home jurisdiction of New Hampshire than cases where you've already found personal jurisdiction. That's based on record evidence. It's not just based on allegations. We've carried our burden. I don't really know how to respond to the question of the lawsuit that's been filed in Georgia except to acknowledge it, even though it's not in the record and was certainly not part of the decision with Judge McAuliffe, and I don't think it's properly raised here. With regard to allusions to subject matter jurisdiction questions around the amount of money issued— what are the relative burdens of litigating in New Hampshire? I think the case law is that heavy emphasis and consideration is given to the plaintiff's choice, and that's repeatedly described by the First Circuit, and that a New Hampshire company has a significant interest in obtaining relief in its home forum for injuries it claims it has suffered by virtue of the causes of action it's alleged. So that's on our side. On the other side, yes, there is a burden of litigating in New Hampshire for someone who has moved one state closer to us, from Georgia to South Carolina. But your decisions in the First Circuit have consistently said that litigating in a foreign jurisdiction alone is not sufficient grounds to reject being hailed into court here, especially where someone foreseeably could have imagined they would be by virtue of their other connections and relationships that are raised in the case. And here we have someone who has held various positions. This is not in dispute. He was a sales rep. He was an account manager. He was a principal account manager. He was a sales director. He was a regional sales director, up and up and up over time. The notion that it would be a surprise to him that should he violate his contract with a New Hampshire business that he could be sued in New Hampshire is not supported in terms of cognizability by First Circuit case law. Other questions from the court? I'm sorry. Thank you, Your Honor. Thank you, Mr. Lewis. Thank you.